JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Unequal Technologies Company and Robert Vito

### DEFENDANTS

RSUI Indemnity Company

**(b)** County of Residence of First Listed Plaintiff   Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Fulton County, GA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*
Gibson & Perkins, PC
100 West 6th Street, Suite 204
Media, PA 19063   610-565-1708

Attorneys *(If Known)*
Aronberg Goldgehn Davis & Garmisa
330 N. Wabash Ave., Suite 1700
Chicago, IL 60611-3586   312/828-9600

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 2   U.S. Government
       Defendant

☒ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | Exchange |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | Product Liability | ☐ 751 Family and Medical Leave Act | | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       Another District
       *(specify)*

☐ 6   Multidistrict
       Litigation -
       Transfer

☐ 8   Multidistrict
       Litigation -
       Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332 and 28 U.S.C 2201

Brief description of cause:
Declaratory Judgment Action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   5-3-19

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 10 LaCrue Road, Glen Mills, PA _____

Address of Defendant: _____ 945 E. Paces Ferry Rd., Ste 1800, Atlanta, GA 30326 _____

Place of Accident, Incident or Transaction: _____ Glen Mills, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5-3-2019   _____   23894
                 *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.   *Diversity Jurisdiction Cases:***

- ☑ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Walter J. Timby, III__, counsel of record *or pro se plaintiff, do hereby certify:*

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 5-3-2019   _____   23894
                 *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNEQUAL TECHNOLOGIES COMPANY<br>**and**<br>ROBERT VITO<br><br>Plaintiffs,<br><br>v.<br><br>RSUI INDEMNITY COMPANY<br><br>Defendant. | Case No.<br><br><br>COMPLAINT |

## COMPLAINT
## INTRODUCTION

This is an Action for Declaratory Relief and Breach of Contract to resolve important questions concerning demand by Unequal Technologies Company ("UTC") and Robert Vito ("Vito") (collectively the "UTC Parties") for insurance coverage relating to claims made against them by a UTC Shareholder. The Shareholder's claims consist of multiple Petitions for Injunctive Relief and Complaints for Declaratory Relief (the "Civil Actions") filed by UTC shareholder Joseph D'Ascenzo ("D'Ascenzo") arising out of the 2017 and 2018 UTC Annual Meeting of Shareholders and elections of the Board of Directors (the "Board") and D'Ascenzo's claim that he was elected to the Board of UTC for the year December 2017 to January 2019 when a new Board was elected.

RSUI issued to UTC a Directors and Officers Policy of Insurance (the "Policy") providing insurance coverage to the UTC Parties for certain **Claims and Losses**, including **Defense Expenses**, made arising out of certain **Wrongful Acts** as defined in the RSUI Policy. The UTC

Parties provided RSUI with notice of the Claim and the Civil Actions and demanded RSUI defend, indemnify and reimburse the UTC Parties' **Defense Expenses** and costs incurred defending the Civil Actions.

The UTC Parties file this Complaint in order to obtain a declaration that RSUI is obligated to defend and indemnify the UTC Parties for the **Claims** asserted in the Civil Actions filed by D'Ascenzo. The UTC Parties also seek a declaration that RSUI shall reimburse the UTC Parties the **Defense Expenses** incurred as a result of the necessary steps of retaining counsel and incurring costs defending the Civil Actions to the date of the Court's Declaration and Order.

## PARTIES

1.      Plaintiff Unequal Technologies Company ("UTC") is a Pennsylvania Corporation and citizen of the Commonwealth of Pennsylvania with offices located at 10 LaCrue Road, Glen Mills, PA

2.      Plaintiff Robert Vito has served as President, CEO and Chairman of the Board of UTC since its formation in 2008.

3.      Defendant RSUI Indemnity Company is a New Hampshire citizen and corporation with offices located at 945 E. Paces Ferry Road, Suite 1800, Atlanta, GA 30326.

## JURISDICTION AND VENUE

4.      This Court may exercise personal jurisdiction over the Defendant as it is a New Hampshire citizen authorized to and conducting business in the Commonwealth of Pennsylvania and within this District.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332, there being complete diversity between Plaintiffs and Defendant and the amount in controversy exceeds $75,000.00, and the Federal Declaratory Judgment Act 28 U.S.C. §2201.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) as the Policy of Insurance and the breach thereof at issue originated in this judicial district.

## A. DIRECTORS AND OFFICERS POLICY OF INSURANCE

7.     On or before November 19, 2017 Defendant issued a Directors and Officers Liability Policy #NP674556, for the policy period November 19, 2017 to November 19, 2018 (the "Policy"). (A copy of the Policy is attached hereto as Exhibit "A").

8.     The Policy was initially issued by Defendant RSUI on or about November 19, 2013 and was renewed annually until the November 19, 2017 renewal #NHP 670187.

9.     The Policy defines an **Insured Organization** as the organization named in Item 1. of the Declarations Page and any Subsidiary existing prior to or at the inception date of this policy.

10.     The Policy defines an **Insured Person** as any past, present or future director, officer, or **Employee,** management committee members or members of the Board of Managers of the **Insured Organization.**

11.     UTC is the **Insured Organization** identified in Item 1 of the Declarations Page of the Policy.

12.     Vito, as CEO, Employee and Board Member since 2008 is an **Insured Person** as defined in the Policy.

13.     The Policy defines a **Claim,** either in the singular or the plural, as a written demand for money or non-monetary relief; a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by receipt or service of a complaint or similar pleading.

14.     The multiple Civil Actions, Petitions for Injunctive and Declaratory Relief, as set forth herein more specifically below, are **Claims**, i.e. demands for non-monetary relief and a Civil pleading for non-monetary relief.

15.     The Policy defines a **Wrongful Act** as any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty or any actual or alleged Employment Practices Wrongful Act.

16.     The Civil Actions filed by D'Ascenzo allege specific and actual errors, omissions, misleading statements, neglect or breach of duty related to the UTC Parties' actions and the December 2017 Annual Meeting and election of the Board for the years 2017 and 2018 as more specifically set forth below.

17.     The Policy Periods are defined in Item 2. Policy Period from 11/19/2017 to 11/19/2018 and 11/19/2018 to 11/19/2019.

18.     The Civil Actions filed by D'Ascenzo allege **Wrongful Act(s)** which occurred during the Policy Periods 11-19-2017 to 11-19-2019.

19.     The Policy defines **Loss** as damages and includes **Defense Expenses.**

20.     **Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom.

21.     The legal fees, expenses and costs of defense incurred by the UTC Parties for the defense of the Civil Actions filed by D'Ascenzo are a **Loss, Damages** and **Defense Expense**.

22.     The Policy Insuring Agreement issued by RSUI provides:

### SECTION I – INSURING AGREEMENT

A.      With the **Insured Person** that if a **Claim** for **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** …the **Insurer** will pay on behalf of such

**Insured Person** all **Loss** such **Insured Person** is legally obligated to pay, except and to the extent that the **Insured Organization** is required or permitted to indemnify such **Insured Persons.**

B.      With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the Policy Period .... the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** is required or permitted to indemnify the **Insured Person.**

C.      With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** .... the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

## STATEMENT OF FACTS

23.      On or about May 31, 2013 D'Ascenzo purchased 1000 shares of UTC from Vito and remains a shareholder of UTC to date.

24.      D'Ascenzo has alleged that he requested, between the date of purchase and April 2017, information regarding UTC; however, the dates and information requests are not documented by D'Ascenzo.

25.      D'Ascenzo alleges that in or about December 2015 he first received the 2014 Audited Financial Statement, dated December 2014.

26.      In or about April 2017, D'Ascenzo retained Counsel Frank Rizzo and sent to UTC a Demand to Inspect Records of UTC.

27.      On or about October 29, 2017, UTC responded to the Demand to Inspect Records of UTC with documentation as required by 15 Pa. C.S.A. 1508 (b).

28.      On or about May 4, 2017, D'Ascenzo sent to Director William Landman a demand on behalf of "D'Ascenzo and other Shareholders" a request to investigate issues to which Landman and UTC responded.

29.      On or before December 15, 2017 D'Ascenzo "set out for a proxy bid to support his goal of being elected to what D'Ascenzo contends was an open third seat on the Board of Directors.

30.      D'Ascenzo first gave notice of his goal to be elected to the Board of Directors to UTC Counsel on or about December 15, 2017.

31.      On or about December 19, 2017 UTC held the Annual Meeting of Shareholders (December 2017 Meeting) to elect two (2) Board Members as provided by UTC's Bylaws was and the Unanimous Consent of the Board setting the Board at two members.

32.      Before and shortly after the December 2017 Meeting, Counsel for D'Ascenzo raised objections to the Notice of the December 2017 meeting; failure to provide share register; failure to hold election by ballot; improper identification of Judge of Election; failure to comply with Shareholder Agreements; number of Board seats available; and disqualified proxies.

33.      Vito and Landman were elected to the Board, each having received 31,845,274 votes, with D'Ascenzo receiving only 4,483,590 votes.

34.      Each and every one of D'Ascenzo's allegations regarding the December 2017 Meeting were in support of his claim that he was elected to the UTC Board "Third Seat".

**D'Ascenzo Litigation vs. UTC and Vito**

      **A.      D'Ascenzo Petition for Special or Preliminary Injunction and Complaint for Declaratory Judgment— "June 2018 Action"**

36.      On June 13, 2018 D'Ascenzo filed a Complaint for Declaratory Relief in the Court of Common Pleas of Chester County, Pennsylvania requesting the following relief:

Complaint for Declaratory Relief

a) Declaration that Defendant UTC Board of Directors Consists of Three Seats and
   that Joseph D'Ascenzo is a Member of the Board (June 2017 Action, Count I,
   ¶¶ 64-116);

b) Joseph D'Ascenzo, as a Member of the Board, is authorized to convene a Special
   Litigation Committee to investigate the demands set forth in the Shareholder
   Demand and other issues arising from the investigation (June 2017 Action, at ¶
   116).

c) Request the Bylaw of UTC regarding Indemnification of UTC by shareholder
   for cost of replying to the April 2017 Demand to Inspect Records be declared
   null and void.

37.     On June 18, 2018 D'Ascenzo filed a Petition for Special or Preliminary Injunction

requesting the following relief:

Petition for Preliminary Injunction

a) D'Ascenzo was elected to the Board of Directors on December 19, 2017
   (Petition, at ¶¶ 80-124);

b) UTC and Vito are enjoined from precluding Plaintiff (D'Ascenzo) from serving
   as a Director of UTC and further enjoined from precluding D'Ascenzo from
   convening a Special Litigation Committee (*Id.*, at ¶ 162).

## B.     D'Ascenzo's Amended Petition for Injunction and Special Relief and Amended Complaint for Declaratory Judgment ("August 2018 Action")

37.     On August 28, 2018 D'Ascenzo filed an Amended Petition for Special or Preliminary

Injunction requesting the following relief.

Amended Petition for Special or Preliminary Injunction

a) Petitioner Requests an Order Declaring that he was elected to the Board
   of Directors on December 19, 2017 with all rights afforded to him under
   the Bylaw until such time he is properly replaced at the next Annual
   Meeting (Amended Petition, Count I, ¶¶ 36-121).

38. On August 29, 2018 D'Ascenzo filed an Amended Complaint for Declaratory and Injunctive Relief and requested the following relief:[1]

>    Amended Complaint for Declaratory and Injunctive Relief
>
>    a) Declaration that defendant UTC Board of Directors Consists of Three Seats and that Joseph D'Ascenzo is a Member of the Board (Amended Complaint, ¶¶ 56-143);
>
>    b) The Court should declare formation of a Special Litigation Committee with Board Member Joseph D'Ascenzo serving as Chairperson (Amended Complaint, Count III, ¶¶ 144-192).

**C.    Intervenors Meadvin, Timms et al. Petition to Intervene and Petition for Special or Preliminary Injunction ("Intervenors' Action")**

39. On or about September 17, 2018, UTC shareholders Meadvin, Timms, Cannella and Kellmer ("Intervenors") filed a Petition to Intervene and Petition for Special or Preliminary Injunction requesting the following relief:

>    a) An Order declaring the election for the Board of Directors held on December 19, 2017 is Voided based on lack of proper Notice of the Meeting to all shareholders (Count I, ¶¶ 32-40).

40. On or about October 9, 2018 Judge Mahon issued an Order granting the Petition to Intervene of the Intervenors.

**D.    Intervenor Gregory Gardner Petition to Intervene ("Gardner Action")**

41. On October 12, 2018 Gregory Gardner, a UTC shareholder, filed a Petition to Intervene and requested permission to Intervene and an Order be entered declaring Plaintiff D'Ascenzo as a Director of the Board as of December 19, 2017.

**E.    Disposition of Petitions**

---

[1] D'Ascenzo failed to serve the Amended Complaint on the Defendants.

42.     By Order dated December 7, 2018 Judge Mahon denied D'Ascenzo's Amended Petition

for Special or Preliminary Injunction and dismissed the Meadvin Intervenors' Petition for Special

or Preliminary Injunction.

43.     Judge Mahon's December 7, 2018 Order found the following:

   a.  D'Ascenzo is seeking an affirmative, mandatory injunction that would place him on
       the UTC Board;

   b.  The parties acknowledge that UTC did not provide the requisite shareholders with
       proper notice of the initial December 18, 2017 shareholder meeting in accordance with
       UTC Bylaw 2.03, which meeting resulted in D'Ascenzo allegedly being elected to
       UTC's Board of Directors;

   c.  It would be inequitable and unjust for the Court to deem D'Ascenzo a member of
       UTC's Board of Directors when the underlying meeting that allegedly resulted in the
       election was improper;

   d.  Rather, since the December 18, 2017 shareholders meeting was conducted without
       proper notice to the requisite shareholders, the meeting was invalid and any resolution
       passed during the meeting, including the purported election of D'Ascenzo to UTC's
       Board, cannot stand. (Order, December 7, 2018).

### E.     D'Ascenzo's Second Amended Petition for Injunction and Special Relief and Complaint for Declaratory Judgment ("November 2018 Action")

44.     On November 15, 2018 the Docket records a Second Amended Complaint for Declaratory

or Special Relief was filed and requested relief related to the election of 2017 and D'Ascenzo's

right to the third seat on the Board.

45.     The Second Amended Complaint was improperly filed without leave of court or parties more than twenty days after Defendants filed Preliminary Objections to the Amended Complaint.

46.     On December 7, 2018 the November 2018 Second Amended Complaint for Declaratory or Special Relief was stricken by Order of Judge Mahon.

### F.     Petition for Special or Preliminary Injunction under Pa. R.C.P. 1531 ("Rule 1531 Action")

47.     On January 25, 2019 D'Ascenzo filed a Petition for Special or Preliminary Injunction under Pa.R.C.P. P 1531 requesting the Annual Meeting of the Board scheduled for January 29, 2019 be enjoined, re-schedule the Meeting and other relief related to the way the Annual Meeting for 2018-2019 was to be conducted.

48.     On January 29, 2019 the Annual Meeting of UTC and election of the Board of Directors was held and the Judge of Election certified that Vito, William Landman and Anthony Tomasello were elected to the Board for the year 2018-2019.

49.     On January 30, 2019 Judge Mahon Denied D'Ascenzo's Petition for Special or Preliminary Injunction under Pa. R.C.P. 1531.

### G.     Second Amended Complaint for Declaratory Relief ("February 2019 Action")

50.     On January 30, 2019 Judge Mahon granted D'Ascenzo permission to file a Second Amended Complaint for Declaratory or Special Relief within five (5) days of the Order.

51.     On February 4, 2019 Plaintiff filed the February 2019 Action and requested a declaration:

a)      D'Ascenzo was elected to the Board of Directors on December 19, 2017 (Count 1 ¶¶ 162-226);

b)      UTC and Vito are estopped from limiting the Board of Directors to two Directors after requiring Shareholders in attendance at the December 2017 meeting to restrict their

Stock and require them to vote for their Independent Candidate if one was appointed (Count II, ¶¶227-248);

c)      D'Ascenzo was elected to the Board of Directors at the December 2017 Meeting due to his intended beneficiary status of the Shareholder Agreement requiring the Board consist of three Directors (Count III, ¶¶ 249-263);

d)      D'Ascenzo was elected to the Board of Directors due to the disqualification of Vito as a candidate for Director (Count IV, ¶¶ 264-272);

e)      A declaration that D'Ascenzo was elected to the Board due to vote tally incorrectly attributed votes to Landman and that D'Ascenzo and Vito were elected (Count V, ¶¶ 273-293);

f)      A declaratory judgment that the Court enter an Order declaring D'Ascenzo was elected to the Board on December 19, 2017 with all rights afforded to him under Bylaws and Pennsylvania Law until such time he is replaced at the next Annual Meeting.

g)      Court Order for Supervision of the 2018-2019 election of the Board of Directors (Count X, ¶¶ 352-369);

h)      The Court enjoin the Defendants from enforcing restrictions on voting at the 2018-2019 Annual Meeting set forth in Shareholder Agreements and a declaration that the mechanism for voting in the Shareholder Agreement is impossible to perform (Counts XI and XII, ¶¶371-397).

52.     The RSUI Policy provides for coverage to **Insured** Vito and **Insured Organization** UTC for **Wrongful Acts, Loss** and **Defense Expenses** which occur during the Policy Periods 11-17-2017 through 11-17-2019.

53.     The Civil Actions of D'Ascenzo allege **Wrongful Acts** for the time period of June 2017 through the present and request relief that D'Ascenzo be elected to the Board of UTC.

54.     UTC and Vito retained legal representation to defend their interest in the Civil Actions set forth above and have incurred and will incur future **Legal Expense** related to the Civil Actions.

55.     On February 25, 2019 all UTC Parties filed Preliminary Objections to the Second Amended Complaint which are now moot as D'Ascenzo filed yet another amended complaint – Third Amended Complaint for Declaratory or Special Relief.

###     H.     Third Amended Complaint For Declaratory or Special Relief ("March 2019 Action")

56.     On March 18, 2019, D'Ascenzo filed a Third Amended Complaint for Declaratory or Special Relief.

57.     The March 2019 Action requested relief is a repetition of the February 2019 Action and requests a declaration with the exception D'Ascenzo requests the 2018-2019 election be declared void:

     a.     D'Ascenzo was elected to the Board of Directors on December 19, 2017. (Count 1 ¶153-218)

     b.     UTC and Vito are estopped from limiting the Board of Directors to two Directors after requiring Shareholders in attendance at the December 2017 meeting to restrict their Stock and require them to vote for their Independent Candidate if one was appointed. (Count II ¶219-239)

     c.     D'Ascenzo was elected to the Board of Directors at the December 2017 Meeting due to his intended beneficiary status of the Shareholder Agreement requiring the Board consist of three Directors (Count III ¶240-258).

d.      D'Ascenzo was elected to the Board of Directors due to the disqualification of Vito as a candidate for Director. (Count IV ¶257-265)

e.      A declaration that he was elected to the Board due to vote tally incorrectly attributed votes to Landman and that D'Ascenzo and Vito were elected. (Count V ¶266-286)

f.      Declaration the election of the Board of Directors held on January 21, 2019 be declared null and void and the Court order a new election under the Court's supervision. (Count VIX ¶345-421 and Count XI ¶422-437)

g.      Count XI and Count XII includes a request to declare the election of January 29, 2019 null and void alleging the voting mechanism set forth in the Shareholder Agreement has no force and effect on the election.

**FIRST CAUSE OF ACTION**
**-Declaratory Judgment Action-**
**Unequal Technologies Company, and Robert Vito vs. RSUI**

56.     Plaintiffs Unequal Technologies Companies and Robert Vito incorporate by reference all the allegations of the Complaint as if set forth herein at length.

57.     Under the terms of the Policy RSUI has a duty to indemnify, defend and reimburse the UTC Plaintiffs for the Claims of Wrongful Acts, Loss and Defense Expenses related to all Civil Actions filed by D'Ascenzo.

58.     Unequal and Vito have filed Preliminary Objections to the Third Amended Complaint and the Objections are pending at the time of the filing of this Civil Action.

**SECOND CAUSE OF ACTION**
**-Breach of Contract-**
**Unequal Technologies Company and Robert Vito vs. RSUI**

59.     Plaintiffs Unequal Technologies Companies and Robert Vito incorporate by reference all the allegations of the Complaint as if set forth herein at length.

60.     UTC Parties have incurred **Loss** and **Defense Expense** to date and will in the future have **Loss** and **Defense Expense** related to Civil Actions filed by D'Ascenzo.

61.     RSUI has denied all demands of the UTC Parties for indemnity, defense and reimbursement of **Legal Expenses** and future **Legal Expense** in an amount in excess of One Hundred Thousand Dollars ($100,000.00) related to the D'Ascenzo Civil Actions.

62.     RSUI has failed to indemnify, defend and reimburse UTC Parties and breached the terms of the Policy of RSUI.

63.     UTC Parties demand payment of all past and future Loss and **Legal Expense** related to the D'Ascenzo Civil Actions.

        **WHEREFORE** Plaintiffs Unequal Technologies Company and Robert Vito request the following relief:

        RSUI is ordered to indemnify and defend Unequal Technologies Company and Robert Vito in the Civil Actions filed at Chester County 2018-06104 by Joseph D'Ascenzo;

        RSUI is ordered to reimburse Unequal Technologies Company and Robert Vito for all Legal Expense related to the Civil Actions filed at Chester County 2018-06104 by Joseph D'Ascenzo.

                                        Respectfully Submitted,

                                        GIBSON & PERKINS PC

                                        Walter J.Timby, III
                                        Attorney I.D. 23894
                                        100 West Sixth Street, Suite 204
                                        Media, PA 19063
                                        610-565-1808
                                        wtimby@gibperk.com

60.     UTC Parties have incurred **Loss** and **Defense Expense** to date and will in the future have **Loss** and **Defense Expense** related to Civil Actions filed by D'Ascenzo.

61.     RSUI has denied all demands of the UTC Parties for indemnity, defense and reimbursement of **Legal Expenses** and future **Legal Expense** in an amount in excess of One Hundred Thousand Dollars ($100,000.00) related to the D'Ascenzo Civil Actions.

62.     RSUI has failed to indemnify, defend and reimburse UTC Parties and breached the terms of the Policy of RSUI.

63.     UTC Parties demand payment of all past and future Loss and **Legal Expense** related to the D'Ascenzo Civil Actions.

        **WHEREFORE** Plaintiffs Unequal Technologies Company and Robert Vito request the following relief:

        RSUI is ordered to indemnify and defend Unequal Technologies Company and Robert Vito in the Civil Actions filed at Chester County 2018-06104 by Joseph D'Ascenzo;

        RSUI is ordered to reimburse Unequal Technologies Company and Robert Vito for all Legal Expense related to the Civil Actions filed at Chester County 2018-06104 by Joseph D'Ascenzo.

                        Respectfully Submitted,

                        GIBSON & PERKINS PC

                        Walter J.Timby, III
                        Attorney I.D. 23894
                        100 West Sixth Street, Suite 204
                        Media, PA 19063
                        610-565-1808
                        wtimby@gibperk.com

## VERIFICATION

I, Robert A. Vito, as an officer of Plaintiff, Unequal Technologies Company am authorized to make this Verification. I hereby state that the facts set forth in the Complaint are true and correct to the best of my knowledge, information and belief.

I understand that the statements herein are made subject to the penalties of 18 Pa.C.S.A. § 4904 (relating to unsworn falsification to authorities).

Robert A. Vito
*CEO   of   Unequal   Technologies
Company*

Date: April 9, 2019

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

# DIRECTORS AND OFFICERS LIABILITY POLICY DECLARATIONS



Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER | RENEWAL OF |
|---|---|---|
| N | HP674556 | NHP670187 |

●THIS IS A CLAIMS MADE POLICY.  PLEASE READ IT CAREFULLY.●

THIS POLICY IS ISSUED BY:   RSUI Indemnity Company (hereinafter referred to as the Insurer)

**ITEM 1.**  INSURED'S NAME AND MAILING ADDRESS

PRODUCER'S NAME AND ADDRESS

UNEQUAL TECHNOLOGIES COMPANY

10 LACRUE AVENUE

GLEN MILLS, PA 19342

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM 2. POLICY PERIOD:**

FROM ___11/19/2017___ TO ___11/19/2018___ 12:01 AM Standard Time at the Insured's address as stated herein

**ITEM 3. LIMIT OF LIABILITY:**

$ ___1,000,000___ Aggregate Limit of Liability each policy period

**ITEM 4. RETENTION:**

$ 0 _____ Insuring Agreement A

$ 50,000 _____ Insuring Agreement B

$ 50,000 _____ Insuring Agreement C

$ 50,000 _____ Employment Practices Claim

**ITEM 5. PREMIUM:**

$ ___20,960.00___

**ITEM 6. POLICY FORM AND ENDORSEMENTS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:**
SEE RSG 200007 0204 - SUPPLEMENTAL DECLARATIONS - SCHEDULE OF ENDORSEMENTS; RSG 241001 0609 - DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY - 2009

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____

December 28, 2017
DATE

AUTHORIZED REPRESENTATIVE

A member of Alleghany Insurance Holdings LLC

## DIRECTORS AND OFFICERS LIABILITY POLICY
## SUPPLEMENTAL DECLARATIONS



POLICY NUMBER:      NHP674556

### SCHEDULE OF ENDORSEMENTS

| TITLE | FORM NUMBER |
|---|---|
| Disclosure Pursuant to Terrorism Risk Insurance Act | RSG 204123 0116 |
| Absolute Exclusion - Bodily Injury and Property Damage with Allocation | RSG 246008 0315 |
| Amended Definition of Loss - Defense Claims for ADA | RSG 204140 0511 |
| Cap on Losses From Certified Acts of Terrorism | RSG 204081 0315 |
| Coverage Extension - Crisis Management | RSG 204163 0409 |
| Exclusion - Bankruptcy - Insolvency | RSG 206049 0204 |
| Exclusion - Prior Acts | RSG 206069 1009 |
| Exclusion - Products Liability | RSG 206072 0204 |
| Exclusion - Professional Errors and Omissions With Management Carve Back | RSG 206073 0204 |
| Exclusion - Remove Anti-Trust | RSG 246003 0606 |
| Exclusion - Telecommunications Claims | RSG 206097 0315 |
| Full Severability | RSG 204126 0204 |
| Pennsylvania - Three (3) Year Bilateral Discovery Period | RSG 202054 0704 |
| Pennsylvania Changes - Cancellation and Nonrenewal | RSG 203029 1109 |
| Pennsylvania Notice | RSG 202015 0204 |
| Private Endorsement | |
| Severability of the Entity | RSG 204145 0407 |

**THIS ENDORSEMENT IS ATTACHED TO AND MADE A PART OF THIS POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

| | |
|---|---|
| Terrorism Premium | **$0** |

**Additional information, if any, concerning the terrorism premium:**
**The portion of your premium for the policy term attributable to coverage for all acts of terrorism covered under this policy including terrorist acts certified under the Act is listed above.**

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations Page.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act, as amended, the **Insurer** is required to provide the **Insured** with a notice disclosing the portion of the **Insured's** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of the **Insured's** premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations Page.

As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses that exceeds the applicable **Insurer** retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap Insurer Participation in Payment of Terrorism Losses**

If aggregate **Insured** losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met our **Insurer** deductible under the Terrorism Risk Insurance Act, the **Insurer** will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case **Insured** losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

Policy No.: NHP674556     Effective: 11/19/2017

RSG 204123 0116

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ABSOLUTE EXCLUSION – BODILY INJURY AND PROPERTY DAMAGE WITH ALLOCATION

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – PRIVATE COMPANY**

SECTION IV. - EXCLUSIONS, 4. is amended to read as follows:

4.  Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

    **a.** Bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; provided, this EXCLUSION 4.a. will not apply to allegations of mental anguish or emotional distress made solely in connection with an **Employment Practices Claim**; or

    **b.** Damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged;

    provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP674556    **Effective:** 11/19/2017

RSG 246008 0315

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AMENDED DEFINITION OF LOSS – DEFENSE FOR ADA CLAIMS

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

SECTION III. – DEFINITIONS, K. is deleted and replaced by the following:

**K.  Loss** means damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses.  Loss** (other than **Defense Expenses**) shall not include:

1.  Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

2.  Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

3.  Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

4.  The cost of creating or reinstating employment;

5.  Any amounts owed to any **Employee** as wages or compensation previously incurred or vested without regard to any **Claim**;

6.  Civil or criminal fines or penalties;

7.  Taxes, whether owed to or by any **Insured**;

8.  Any liability, or costs incurred, due to any **Insured's** obligation to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar;

9.  Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable.  For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.

All other terms and conditions of this policy remain unchanged.

---

· **Policy No.:** NHP674556      **Effective:** 11/19/2017

RSG 204140 0511

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY -- NOT FOR PROFIT ORGANIZATIONS
DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY
EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY
EXCESS LIABILITY POLICY**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met our insurer deductible under the Terrorism Risk Insurance Act, the **Insurer** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Exclusion.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP674556      **Effective:** 11/19/2017

RSG 204081 0315

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# COVERAGE EXTENSION – CRISIS MANAGEMENT

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY – PRIVATE COMPANY
DIRECTORS AND OFFICERS LIABILITY POLICY – PUBLIC COMPANY**

The **Insurer** shall provide a $25,000 sublimit for **Crisis Management Expenses** the **Insured** incurs resulting directly from any **Claim** covered under this policy.  The sublimit shall be part of and not in addition to the Limit of Liability set forth in Item 3. of the Declarations Page.

**Crisis Management Expenses** shall be defined as the reasonable and necessary cost of retaining, for a stipulated period of time with the prior approval of the **Insurer**, an independent public relations consultant and the cost of associated advertising and public relations media and activities.

All other terms and conditions of this policy remain unchanged.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – BANKRUPTCY / INSOLVENCY

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**
**EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY**

The **Insurer** shall not be liable to make any payment for **Loss** under this policy in connection with any **Claim** made against any **Insured**:

1. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any **Wrongful Act** that is alleged to have caused, directly or indirectly, in whole or in part:

   a. The bankruptcy or insolvency of the **Insured Organization**;

   b. The **Insured Organization's** filing of a petition, or a petition being filed against the **Insured Organization** pursuant to the federal Bankruptcy Code or any similar state law;

   c. The **Insured Organization** assigning its assets for the benefit of its creditors; or

   d. By any other means seeking protection under the common or statutory law as a result of insolvency or financial impairment.

2. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, the **Insured Organization** having sustained a financial loss due to a **Wrongful Act** by or on behalf of any **Insured Person** that actually or allegedly occurred before the date that the **Insured Organization** or other party sought protection of the **Insured Organizations** assets by any means including but not limited to those referenced in sections 1. a. through 1. d. of this endorsement.

3. Brought or maintained by or on behalf of any creditor or debt-holder of the **Insured Organization**, or any **Claim** arising out of any actual or alleged **Wrongful Act**, where such **Wrongful Act** actually or allegedly results in the **Insured Organization's** failure, refusal or inability to pay debts or amounts due and owing, including but not limited to **Claims** alleging misrepresentation in connection with any extension of credit or in connection with the purchase or sale of a debt instrument, or **Claims** alleging any **Wrongful Acts** where such **Wrongful Acts** actually or allegedly result in the deterioration in the value of any debt instrument or security as a result of, wholly or in part the bankruptcy or insolvency of the **Insured Organization**.

The specific limitations on coverage contained in this endorsement should not under any circumstances be interpreted to suggest the existence of coverage under terms and conditions elsewhere in this policy or in contexts other than those referenced in this endorsement.

All other terms and conditions of this policy remain unchanged.

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – PRIOR ACTS

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY
DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY
EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY
EXCESS LIABILITY POLICY**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** that alleges, arises out of, is based upon or attributable to, directly or indirectly, in whole or in part, any actual or alleged **Wrongful Acts** which first occurred prior to November 19, 2013.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP674556     **Effective:** 11/19/2017

RSG 206069 1009

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – PRODUCTS LIABILITY

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**
**EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY**

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, attributable to, directly or indirectly, in whole or in part, or in any way involving the failure, malfunction or misuse of any product(s) manufactured, designed or sold by the **Insured Organization**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP674556     **Effective:** 11/19/2017

RSG 206072 0204

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – PROFESSIONAL ERRORS AND OMISSIONS (WITH MANAGEMENT CARVE BACK)

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to, in whole or in part, the performance or rendering of or failure to perform professional services, where such services are undertaken for others for a fee.

Provided, however, this EXCLUSION shall not be applicable to any derivative or shareholder class action claims against any **Insured**, which allege a failure to supervise those who performed or failed to perform such professional services in question.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP674556      **Effective:** 11/19/2017

RSG 206073 0204

*This Endorsement Changes The Policy. Please Read It Carefully.*

# EXCLUSION-REMOVE ANTI-TRUST

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

SECTION IV. – EXCLUSIONS, 13. b. is deleted in its entirety.

All other terms and conditions of this policy remain unchanged.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

# EXCLUSION - TELECOMMUNICATIONS CLAIMS

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**
**EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY**
**EXCESS LIABILITY POLICY**

The **Insurer** shall not be liable to make any payment for **Loss** from any **Telecommunications Claim.** A **Telecommunications Claim** is any **Claim**:

(a) Arising from, based upon, attributable to, or in consequence of any proceeding against any **Insured** brought by the Federal Trade Commission or any other federal, state or local regulatory agency or other administrative body alleging the violation of any federal, state or local laws or regulation pertaining to unsolicited or non-consensual advertising, through faxes, telephone calls, texting or any other medium; and/or

(b) Arising from, based upon, attributable to, or in consequence of, any actual or alleged violation of:

(i) The Fair Debt Collection Practices Act or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world;

(ii) The CAN-SPAM Act of 2003 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world;

(iii) The Telephone Consumer Protection Act (TCPA) of 1991 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world; or

(iv) Any other law, ordinance, regulation, statute or common law relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

All other terms and conditions of this policy remain unchanged.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FULL SEVERABILITY

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. – CONDITIONS, K. Representations is deleted and replaced by the following:

K.  **Representations**

The **Insured** represents that the information, particulars, documents, representations and statements contained in the **Application** are complete, true and accurate; are deemed incorporated into and constituting part of this policy; are material to the acceptance of the risk assumed by the **Insurer** under this policy.  This policy is issued in reliance upon the truth of such representations.  No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**.  If any of the information, particulars, documents, representations and statements contained in the **Application** are untrue, this policy will be void with respect to any **Insured** who knew of such untruth.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP674556     **Effective:** 11/19/2017

RSG 204126 0204

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# PENNSYLVANIA - THREE (3) YEAR BILATERAL DISCOVERY PERIOD

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY – PUBLIC COMPANY**

SECTION V. – CONDITIONS, H. Discovery Period is deleted and replaced with the following:

If the **Insurer** shall refuse to renew this policy or the **Insured Organization** shall cancel or refuse to renew this policy, the **Insured Organization** shall have the right, upon payment of seventy five percent (75%) of the Full Annual Premium, to a period of three hundred and sixty five (365) days following the effective date of such cancellation or non-renewal (herein referred to as the "Discovery Period") in which to give written notice to the **Insurer** of any **Claim** first made against the **Insured** during said three hundred and sixty five (365) day period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.  As used herein, "Full Annual Premium" means the premium stated in Item 5. of the Declarations Page and any additional premium(s) charged during the **Policy Period**.

Alternatively, the **Insured Organization** shall have the right to elect a Discovery Period greater than the three hundred and sixty five (365) Days referenced above.   The following alternative Discovery Period options are as follows:

| Discovery Period | Additional Premium |
| --- | --- |
| 730 Days | 125% of Full Annual Premium |
| 1,095 Days | 150% of Full Annual Premium |

The rights contained in this clause shall terminate unless written notice of such election together with the additional premium due is received by the **Insurer** at the address shown on the Declarations Page within thirty (30) days of the effective date of cancellation or non-renewal.

The Discovery Period is not cancelable and the additional premium charged shall be fully earned at the inception of the Discovery Period.  The Limit of Liability available under the Discovery Period is part of and not in addition to the Limit of Liability stated in Item 3. of the Declarations Page.

All other terms and conditions of this policy remain unchanged.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. – CONDITIONS, G. Cancellation; Renewal Provision is deleted and replaced by the following:

**G.  Cancellation**

1.  The **Insured Organization** shown in the Declarations may cancel this policy by writing or giving notice of cancellation

2.  **Cancellation Of Policies In Effect for Less Than 60 Days**

    The **Insurer** may cancel this policy by mailing or delivering to the **Insured Organization** written notice of cancellation at least thirty (30) days before the effective date of cancellation.

3.  **Cancellation of Policies in Effect for 60 Days Or More**

    If this policy has been in effect for sixty (60) days or more or if this policy is a renewal of a policy the **Insurer** issued, the **Insurer** may cancel this policy only for one or more of the following reasons:

    a.  The **Insured Organization** has made a material misrepresentation which affects the insurability of the risk.  Notice of cancellation will be mailed or delivered at least fifteen (15) days before the effective date of cancellation.

    b.  The **Insured Organization** has failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit.  Notice of cancellation will be mailed at least fifteen (15) days before the effective date of cancellation.

    c.  A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period.  Notice of cancellation will be mailed or delivered at least sixty (60) days before the effective date of cancellation.

    d.  Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies.  Notice of cancellation will be mailed or delivered at least sixty (60) days before the effective date of cancellation.

    e.  Material failure to comply with policy terms, conditions or contractual duties.  Notice of cancellation will be mailed or delivered at least sixty (60) days before the effective date of cancellation.

    f.  Other reasons that the Insurance Commissioner may approve.  Notice of cancellation will be mailed or delivered at least sixty (60) days before the effective date of cancellation.

    This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by the **Insurer**.

4.  The **Insurer** will mail or deliver the **Insurer's** notice to the **Insured Organization's** last mailing address known to the **Insurer**.  Notice of cancellation will state the specific reasons for cancellation.

5.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

RSG 203029 1109

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

6. If this policy is cancelled, the **Insurer** will send the **Insured Organization** any premium refund due.  If the **Insurer** cancels, the refund will be pro rata and will be returned within ten (10)business days after the effective date of cancellation.  If the **Insured Organization** cancels, the refund may be less than pro rata and will be returned within thirty (30) days after the effective date of cancellation.  The cancellation will be effective even if the Insurer has not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail.  Proof of mailing will be sufficient proof of notice.

**Nonrenewal**

If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the **Insured Organization** at least sixty (60) days before the expiration date of this policy.

**Increase of Premium**

If the **Insurer** increases the **Insured Organization's** renewal premium, the **Insurer** will mail or deliver to the **Insured Organization** written notice of the **Insurer's** intent to increase the premium at least thirty (30) days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the **Insured Organization's** last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP674556      **Effective:** 11/19/2017

RSG 203029 1109

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# PENNSYLVANIA NOTICE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

The following statements are added to this policy:

The **Insurer**, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or **Loss**. These services may include any of the following or related services incident to the **Application** for, issuance, renewal or continuation of, a policy of insurance:

1.  Surveys;

2.  Consultation or advice; or

3.  Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the **Insurer**, its agents, employees or service contractors acting on its behalf, are not liable for damages from injury, death or **Loss** occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1.  If the injury, death or **Loss** occurred during the actual performance of the services and was caused by the negligence of the **Insurer**, its agents, employees or service contractors;

2.  To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3.  If any acts or omissions of the **Insurer**, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP674556     **Effective:** 11/19/2017

RSG 202015 0204

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*This Endorsement Changes The Policy. Please Read It Carefully.*

# PRIVATE COMPANY AMENDATORY 2010

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY

SECTION I. – INSURING AGREEMENTS

Notwithstanding anything contained in this policy to the contrary, the coverage provided under SECTION I., INSURING AGREEMENT A. and B. shall be non-rescindable by the **Insurer**.

SECTION III – DEFINITIONS, A. Application is amended to read:

**A.  Application** means the application attached to and forming a part of this policy, including any materials submitted or requested in connection with such application, all of which are deemed a part of this policy.

SECTION III – Definitions B, Claim, is amended to include:

4.  a governmental request for Extradition of an Insured Person, or the execution of a warrant for the arrest of an Insured Person when such execution is an element of Extradition.

SECTION III – DEFINITIONS I, Insured Persons shall be amended to include:

3.  Advisory and Scientific Boards

SECTION IV. – EXCLUSION 8., is deleted and replaced by the following:

For any actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or for any direction or request to test, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; provided, however, this exclusion shall not apply to any Claim brought by a securities holder of the Company alleging loss of shareholder value as a result of managements failure to disclose or implement controls of pollutants or to any Employment Practices Claim;

Pollutant includes (but is not limited to) an solid, liquid, gaseous or thermal irritant or contaminant, whether live or inanimate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled , reconditioned or reclaimed;

SECTION IV. – EXCLUSION 9.d. is deleted and replaced by the following:

d.  To any **Claim** brought  by any past director, officer, trustee, manager or equivalent executives of the **Insured Organization** who have not served as a director, officer, trustee, manager or equivalent Executive for at least two (2) years prior to the date such **Claim** is first made, and if the **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation or intervention of the **Insured Organization** or any **Insured Person** not described in this paragraph 9.d; or

SECTION IV – EXCLUSION 9. is amended to include the following:

c.  Creditors Committee

g.  (1) by an individual director of a foreign subsidiary against a director of the same Foreign Subsidiary in his or her capacity as such; (2) which is commenced solely due to the request of a shareholder(s) of said foreign subsidiary and not at the instigation or solicitation of the Company or any other **Insured**; (3) because a statutory law in such Foreign Jurisdiction prohibits shareholders from bringing such a **Claim** whether in the form of a class, derivative or direct action.

Notwithstanding the foregoing, the above paragraph shall only apply to a **Claim(s):** (1) brought in the Foreign Jurisdiction in which such Foreign Subsidiary is formed or incorporated; and (2) alleging a violation of law (common or statutory, including breaches of fiduciary duty) of such Foreign Jurisdiction.

SECTION IV – EXCLUSION 11. is deleted and replaced by the following:

11. Alleging, arising out of, based upon or attributable to, directly or indirectly, the same or essentially the same facts underlying or alleged in any matter which, prior to the inception date of this policy, has been the subject of notice to any D&O/EPL policy of a **Claim**, or a potential or threatened **Claim**, or an occurrence or circumstance that might give rise to a **Claim** under any policy of which this insurance is a renewal or replacement or which it may succeed in time;

SECTION IV – EXCLUSIONS are amended to include the following:

For the performance or rendering of or failure to perform professional services, where such services are undertaken for others for a fee;

SECTION V- CONDITIONS, C. Notice of Claim or Circumstance is deleted and replaced by the following:

**C. Notice of Claim or Circumstance**

1. If during the **Policy Period** or Discovery Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the Insured give written notice of such **Claim** to the **Insurer** as soon as practicable after the **Insured's** Chief Executive Officer, Chief Financial Officer, General Counsel, or Risk Manager of the **Insured Organization** or equivalent person first becomes aware of the Claim, but in no event shall such notice be given later than ninety (90) days after the expiration or earlier cancellation date of this Policy.

SECTION V. – CONDITIONS, I.1 and 2, Merger Consolidation or Acquisition is amended to include the following:

1. If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets do not exceed thirty-five percent (35%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place on or after the effective date of such creation or acquisition.

2. If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets exceed thirty five percent (35%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place within the first ninety (90) days after the date of such creation or acquisition. After this ninety (90) day period, the created or acquired **Subsidiary** shall no longer be deemed an **Insured Organization**, unless:

SECTION V. – CONDITIONS is amended to include the following:

U. In the event that there is an inconsistency between a state amendatory attached to this policy and any term or condition of this policy, then it is understood and agreed that, where permitted by law, the **Insurer** shall apply those terms and conditions of either the amendatory or the policy which are more favorable to the **Insured**.

V. In consideration of the premium charged, if a liquidation or reorganization proceeding is commenced by the Parent Company and/or any other Company (whether voluntarily or involuntarily) under Title 11 of the United States Code, as amended, or any similar state, local or foreign law ("Bankruptcy Law), then with respect to a covered Claim, the Insureds hereby:

   (a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to   the proceeds of this Policy under such Bankruptcy Law; and

   (b) agree not to oppose or object to any efforts by the Insurer to obtain relief from any stay or injunction applicable to the proceeds of this Policy as a result of the commencement of such liquidation or reorganization proceeding.

All other terms and conditions of this policy remain unchanged.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SEVERABILITY OF THE ENTITY

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION IV. – EXCLUSIONS, the paragraph immediately following EXCLUSION 3., is deleted and replaced by the following:

The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of EXCLUSIONS 1. through 3. above.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP674556     **Effective:** 11/19/2017

RSG 204145 0407



RSUI Indemnity Company
**Corporate Office**
945 East Paces Ferry Rd.
Atlanta, GA 30326-1160

# DIRECTORS AND OFFICERS LIABILITY POLICY PRIVATE COMPANY

**NOTICE:** THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE **CLAIMS** FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD** THAT ARE REPORTED TO THE **INSURER** DURING THE **POLICY PERIOD**, OR WITHIN SIXTY (60) DAYS THEREAFTER. THE LIMIT OF LIABILITY AVAILABLE TO PAY **LOSS** SHALL BE REDUCED OR TOTALLY EXHAUSTED BY PAYMENT OF **DEFENSE EXPENSES**.

PLEASE READ YOUR POLICY CAREFULLY

## CLAIM NOTICE

**Mail notices to:** **RSUI Group, Inc.**
**945 East Paces Ferry Rd.**
**Suite 1800**
**Atlanta, GA 30326-1160**

**Fax notices to:** **(404) 231-3755**
**Attn: Claims Department**

**E-mail notices to:** **reportclaims@rsui.com**

A member of Alleghany Insurance Holdings LLC

# TABLE OF CONTENTS
## DIRECTORS AND OFFICERS LIABILITY POLICY
## PRIVATE COMPANY
## PLEASE READ YOUR POLICY CAREFULLY

## DECLARATIONS PAGE

Item 1. – Named Insured and Address
Item 2. – Policy Period
Item 3. – Limit of Liability
Item 4. – Retention
Item 5. – Premium
Item 6. – Endorsements Attached

## SECTIONS

| | | |
|---|---|---|
| I. | INSURING AGREEMENTS | 3 |
| II. | COVERAGE EXTENSIONS | 3 |
| | Marital Estate | 3 |
| | Outside Board Extension | 3 |
| | Estates and Legal Representatives | 3 |
| III. | DEFINITIONS | 3 |
| IV. | EXCLUSIONS | 6 |
| V. | CONDITIONS | 8 |
| | Duty to Defend | 8 |
| | Limit of Liability; Retention; Payment of Loss | 8 |
| | Notice of Claim or Circumstance | 9 |
| | Cooperation | 9 |
| | Other Insurance and Indemnification | 9 |
| | Allocation | 9 |
| | Cancellation; Renewal Provision | 9 |
| | Discovery Period | 10 |
| | Merger, Consolidation or Acquisition | 10 |
| | Bankruptcy and Priority of Payments | 11 |
| | Representations | 11 |
| | No Action Against Insurer | 11 |
| | Subrogation | 12 |
| | Authorization and Notices | 12 |
| | Changes | 12 |
| | Assignment | 12 |
| | Acceptance | 12 |
| | Headings | 12 |
| | Governing Law Clause | 12 |
| | Territory | 12 |
| | Nuclear Exclusion | 13 |

Words and phrases that appear in **bold** text have special meaning. Refer to SECTION III. - DEFINITIONS.

In consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, the **Insurer** agrees:

## SECTION I. - INSURING AGREEMENTS

**A.** With the **Insured Person** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of such **Insured Person** all **Loss** such **Insured Person** is legally obligated to pay, except and to the extent that the **Insured Organization** is required or permitted to indemnify such **Insured Persons**.

**B.** With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** is required or permitted to indemnify the **Insured Person**.

**C.** With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

## SECTION II. - COVERAGE EXTENSIONS

**A. Marital Estate**

This policy shall cover **Loss** arising from any **Claim** made against the lawful spouse or any legally recognized domestic partner of an **Insured Person** for **Claims** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person** (where such status is derived by reason of statutory law or common law) where such **Insured Person** is entitled to coverage under this policy. Such coverage shall extend to any **Claim** in which a recovery is sought from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner.

Provided, however, that this COVERAGE EXTENSION shall not extend coverage to any **Claim** for, arising from, based upon or attributable to any actual or alleged **Wrongful Act** of the spouse or domestic partner.

**B. Outside Board Extension**

This policy shall cover **Loss** arising from an **Insured Person** having served, at the direction of and with the consent of the **Insured Organization**, as Director, Officer, or Trustee for any eleemosynary corporation or other not for profit organization where such **Insured Person** is entitled to indemnification by the **Insured Organization**.

This COVERAGE EXTENSION shall be excess of any indemnification and/or insurance that may be permitted or provided by such eleemosynary corporation or organization, regardless of payment made by or on behalf of such eleemosynary corporation or organization, including but not limited to any other Director and Officer Liability Insurance or similar insurance provided for, to, or by any such eleemosynary corporation or organization.

**C. Estates and Legal Representatives**

This policy shall cover **Loss** arising from any **Claim** made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased, or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, for the **Wrongful Act** of such **Insured Person**.

## SECTION III. - DEFINITIONS

**A. Application** means the application attached to and forming a part of this policy, or any prior policy, including any materials submitted or requested in connection with such application, all of which are deemed a part of this policy.

**B. Claim**, either in the singular or the plural, means:

**1.** A written demand for monetary or non-monetary relief;

**2.** A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

    **a.**  Receipt or service of a complaint or similar pleading;

    **b.**  Return of an indictment (in case of a criminal proceeding); or

    **c.**  Receipt of a notice of charges;

**3.**  An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

The DEFINITION of **Claim** shall include an **Employment Practices Claim**; provided, the DEFINITION of **Claim** shall not include any internal or external labor or grievance proceeding which is pursuant to a collective bargaining agreement.

**C.**  **Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom. **Defense Expenses** however, shall not include:

    **1.**  Remuneration, overhead or benefit expenses associated with any **Insured Person**; or

    **2.**  Any obligation to apply for or furnish any appellate or similar bond.

**D.**  **Employee** means any past, present or future employee of the **Insured Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee of the **Insured Organization.** An individual who is leased or contracted to the **Insured Organization** shall also be an **Employee**, but only if the **Insured Organization** provides indemnification to such leased or contracted individual in the same manner as is provided to the **Insured Organization's** employees.

**E.**  **Employment Practices Claim** means any **Claim** alleging an **Employment Practices Wrongful Act**.

**F.**  **Employment Practices Wrongful Act** means any actual or alleged:

    **1.**  Wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied employment contract;

    **2.**  Employment related harassment (including but not limited to sexual harassment);

    **3.**  Employment related discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

    **4.**  Employment-related retaliation;

    **5.**  Employment-related misrepresentation to an **Employee** or applicant for employment with the **Insured Organization**;

    **6.**  Employment-related libel, slander, humiliation, defamation and/or invasion of privacy;

    **7.**  Wrongful failure to employ or promote;

    **8.**  Wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation, including the giving of defamatory statements in connection with an **Employee** reference;

    **9.**  Employment related wrongful discipline;

  **10.**  Failure to grant tenure or practice privileges;

  **11.**  Failure to provide or enforce adequate or consistent organization policies or procedures relating to employment performance;

  **12.**  Violations of the following federal laws (as amended) including all regulations promulgated thereunder:

    **a.**  Family and Medical Leave Act of 1993;

    **b.**  Americans with Disabilities Act of 1992 (ADA);

    **c.**  Civil Rights Act of 1991;

    **d.**  Age Discrimination in Employment Act of 1967 (ADEA), including the Older Workers Benefit Protection Act of 1990; or

e. Title VII of the Civil Rights Law of 1964 (as amended) and 42 U.S.C. Section 1983, as well as the Pregnancy Discrimination Act of 1978;

13. Violation of an **Insured Person's** civil rights relating to any of the above; or

14. Negligent hiring, retention, training or supervision, infliction of emotional distress, or violation of an individual's civil rights, when alleged in conjunction with any of the foregoing items 1. through 13.,

whether such **Employment Practices Wrongful Act** as described in 1-14 above is committed directly, indirectly, intentionally or unintentionally, but only if the **Employment Practices Wrongful Act** actually or allegedly pertains to acts committed by an **Insured** and are alleged against an **Insured** by an **Insured Person** or applicant for employment with the **Insured Organization**.

G. **Insured** means any **Insured Organization** and/or any **Insured Person**.

H. **Insured Organization** means:

1. The organization named in Item 1. of the Declarations Page and any **Subsidiary** existing prior to or at the inception date of this policy; or

2. Subject to SECTION V. - CONDITIONS, I. Merger, Consolidation or Acquisition of this policy, **Insured Organization** shall mean any **Subsidiary** created or acquired after the inception date of this policy; or

3. In the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

I. **Insured Person** means

1. Any past, present or future director, officer, or **Employee**, management committee members or members of the Board of Managers of the **Insured Organization**; or

2. In the event the **Insured Organization** or a **Subsidiary** thereof operates outside the United States, then the term **Insured Person** also means those titles, positions or capacities for such foreign **Insured Organization** or **Subsidiary** that are equivalent to the positions of directors or officers in the United States.

J. **Insurer** means the Company providing this insurance as shown on the Declarations Page.

K. **Loss** means damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**. **Loss** (other than **Defense Expenses**) shall not include:

1. Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

2. Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

3. Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

4. The cost of creating or reinstating employment;

5. Any amounts owed to any **Employee** as wages or compensation previously incurred or vested without regard to any **Claim**;

6. Civil or criminal fines or penalties;

7. Taxes, whether owed to or by any **Insured**;

8. Amounts, including **Defense Expenses**, arising out of, based upon or attributable to actual or alleged liability or costs incurred by any **Insured** to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person, or any actual or alleged liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an **Employment Practices Claim**;

9. Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable. For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.

L. **Policy Period** means the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations Page or to any earlier policy cancellation or termination date.

M. **Subsidiary** means any entity of which the **Insured Organization**, either directly or indirectly, or through one or more of its **Subsidiaries**:

1. Owns more than fifty percent (50%) of the voting stock and/or outstanding securities; or

2. Has the right to elect or appoint more than fifty percent (50%) of the voting directors, management committee members or members of the Board of Managers.

A **Subsidiary** ceases to be a **Subsidiary** when the **Insured Organization** no longer owns more than fifty percent (50%) of the voting stock and/or outstanding securities, or no longer has the right to elect or appoint more than fifty percent (50%) of the voting directors, management committee members or members of the Board of Managers, or the means by which the **Insured Organization** is legally enabled to exercise fifty percent (50%) ownership or control is formally extinguished.

N. **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty or any actual or alleged **Employment Practices Wrongful Act**, by:

1. An **Insured Person** acting in his or her capacity as such and on behalf of the **Insured Organization** or any matter claimed against them solely by reason of their status as an **Insured Person**; or

2. The **Insured Organization**.

## SECTION IV. - EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

1. Based upon, arising out of or attributable to any remuneration received by an **Insured**, or the granting of any remuneration to any **Insured**, without the previous approval of the stockholders or the Board of Directors, which remuneration is found to have been illegal; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** received remuneration to which such **Insured** was not legally entitled;

2. Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining of any profit or advantage to which an **Insured** was not legally entitled; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** gained profit or advantage to which such **Insured** was not legally entitled;

3. Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any criminal or deliberate fraudulent act; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** committed such criminal or fraudulent act;

The **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of determining the applicability of EXCLUSIONS 1. through 3. above.

4. For actual or alleged bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically injured; provided, this EXCLUSION shall not apply to allegations of mental anguish or emotional distress made solely in connection with an **Employment Practices Claim**;

5. For actual or alleged libel, slander or defamation in any form; provided, this EXCLUSION shall not apply to allegations of libel, slander or defamation in any form made solely in connection with an **Employment Practices Claim**;

6. For violation of any of the responsibilities, obligations or duties imposed by: The Fair Labor Standards Act (except the Equal Pay Act) or any state or local statutory or common law, regulation or ordinance that governs payment or administration of wages, hours worked, or employee entitlements; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Worker Adjustment and Retraining Notification Act; the Consolidated Omnibus Budget Reconciliation Act; the Occupational Safety and Health Act; any rules or regulations of any of the foregoing promulgated thereunder and amendments thereto; or any similar provisions of any federal, state or local statutory or common law that govern the same subject matter governed by the laws referenced in this section even if particular laws have some additional or different provisions; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

7. Alleging, arising out of, based upon or attributable to any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

8. For the actual, alleged or threatened discharge, dispersal, release or escape of pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including but not limited to **Claims** alleging damage to the **Insured Organization**; provided, this EXCLUSION shall not apply to any **Claim** under SECTION I. - INSURING AGREEMENT A. of this policy.

   Pollutant includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, whether live or inanimate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

9. Brought by or on behalf of any **Insured**, or which is brought by any security holder of the **Insured Organization**, whether directly or derivatively, unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured**. Provided, however, this EXCLUSION shall not apply to:

   a. Any **Claim** brought by an **Insured Person**, where such **Claim** is in the form of a cross-claim or a third-party claim for contribution or indemnity, which is part of and results directly from a **Claim** that is not otherwise excluded by the terms of this policy;

   b. An **Employment Practices Claim** brought by an **Insured Person**;

   c. Any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Insured Organization**, in or after any bankruptcy proceeding by or against an **Insured Organization**;

   d. Any **Claim** brought by any past director, officer, trustee, manager or equivalent executives of the **Insured Organization** who have not served as a director, officer, trustee, manager or equivalent executive for at least five (5) years prior to the date such **Claim** is first made, and if the **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation or intervention of the **Insured Organization** or any **Insured Person** not described in this paragraph 9.d;

   e. Any **Claim** brought by an **Employee** of the **Insured Organization** who is not or was not a director or officer of the **Insured Organization** and where such **Claim** is brought by such **Employee** only in their capacity as a stockholder and independently of assistance from **Insureds** expressly as noted in section 9., above; or

   f. Any instigation of or involvement in any **Claim**, or solicitation, assistance, active participation or intervention by any **Insured** whistleblower under Section 806 of the Sarbanes-Oxley Act of 2002 or any rule or regulation promulgated thereunder, or under any similar whistleblower statute, rule or regulation under any other federal or state law.

   Provided further, however, that in the event that an **Insured Person** brings a cross-claim or third-party claim, as described in 9. a. above, against another **Insured Person**, then solely with respect to the **Loss** derived from a cross-claim or third-party claim, the **Insurer** shall be liable solely for **Defense Expenses**;

10. Alleging, arising out of, based upon or attributable to, in whole or part, any litigation involving any **Insured** that was commenced or initiated prior to, or was pending at the inception date of this policy, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation;

11. Alleging, arising out of, based upon or attributable to, directly or indirectly, the same or essentially the same facts underlying or alleged in any matter which, prior to the inception date of this policy, has been the subject of notice to any insurer of a **Claim**, or a potential or threatened **Claim**, or an occurrence or circumstance that might give rise to a **Claim** under any policy of which this insurance is a renewal or replacement or which it may succeed in time;

12. Alleging, arising out of, based upon or attributable to any initial public offering of securities by the **Insured Organization** or alleging the purchase or sale of such securities subsequent to such offering;

13. With respect to INSURING AGREEMENT C. of this policy, only:

   a. For actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, secret or any other intellectual property rights;

   b. For actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships; or

   c. Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement; provided, this EXCLUSION shall not apply to **Defense Expenses** in connection with an **Employment Practices Claim**.

## SECTION V. - CONDITIONS

### A. Duty to Defend

It shall be the right and duty of the **Insurer** to defend any **Claim** against the **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of it choosing. No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld. Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy. The **Insurer** shall have the right to appoint counsel, investigate and conduct negotiations and, with the consent of the **Insured**, to enter into the settlement of any **Claim** that the **Insurer** deems appropriate. If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations;

   1. The **Insured** will thereafter be solely responsible for negotiating and defending such **Claim** at their own expense; and

   2. Subject to the **Insurer's** aggregate Limit of Liability stated in Item 3. of the Declarations Page, the **Insurer's** liability with respect of any such **Claim** will not exceed the amount for which such **Claim** could have been settled by the **Insurer**, including **Defense Expenses** incurred up to and until the time that the **Insured** refuses to consent to settlement.

### B. Limit of Liability; Retention; Payment of Loss

   1. The Limit of Liability stated in Item 3. of the Declarations Page is the maximum aggregate limit that the **Insurer** will pay for all **Loss** under all INSURING AGREEMENTS combined, arising out of any and all **Claims** first made against the **Insured** during the **Policy Period** and the Discovery Period (if purchased) and reported in accordance with the terms and conditions of this policy.

   The **Insurer** will have no obligation to pay **Loss** or to defend or continue to defend any **Claim** after the aggregate Limit of Liability, stated in Item 3. of the Declarations Page, has been exhausted by payment of **Loss**. **Defense Expenses** shall be part of and not in addition to the Limit of Liability and payment of **Defense Expenses** by the **Insurer** will reduce the Limit of Liability.

   2. As a condition precedent to coverage under this policy, the **Insured** shall pay with respect to each **Claim** the applicable Retention amount, as identified in Item 4. of the Declarations Page. The Retention amount shall be reduced solely by covered **Loss** and shall be applied to all **Loss**, including **Defense Expenses**, and the **Insurer** shall only be liable for the amount of **Loss** that is excess of the stated Retention amount.

   3. All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the Retention stated in Item 4. of the Declarations Page, and shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

   4. In the event that a **Claim** implicates more than one of the Retention amounts stated in Item 4. of the Declarations Page, then the largest of the applicable Retention amounts shall be applied, but in no event shall more than one Retention amount be applied to a **Claim**.

5.  The Retention amount applicable to SECTION I. - INSURING AGREEMENT A. of this policy, as stated in Item 4. of the Declarations Page, shall not be applicable under any circumstances where indemnification by the **Insured Organization** is permitted or required, regardless of whether the **Insured Organization** has agreed to indemnify an **Insured Person**, provided it shall apply when indemnification cannot be made by the **Insured Organization** by reason of the **Insured Organization's** financial insolvency.

6.  The **Insurer's** duty to defend the **Insured** and pay **Defense Expenses** ends upon exhaustion of the Limit of Liability, which includes paying or tendering the Limit of Liability into court.

7.  Except for payment of **Defense Expenses**, the **Insurer** shall pay for **Loss** only upon final disposition of any **Claim**.

**C.  Notice of Claim or Circumstance**

1.  If, during the **Policy Period** or Discovery Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** as soon as practicable after such **Claim** is first made, but in no event shall such notice be given later than sixty (60) days after either the expiration date or any earlier cancellation date of this policy.

2.  If, during the **Policy Period** or Discovery Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any **Insured** and, as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the **Insurer** written notice, of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**. The written notice shall include, at a minimum:

    a.  The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and

    b.  The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**.

**D.  Cooperation**

In the event of a **Claim** or notice of circumstances under SECTION V. - CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insured** will provide the **Insurer** with all information, assistance and cooperation that the **Insurer** reasonably requests, and will take no action, without the **Insurer's** prior written consent, that might prejudice the **Insured's** or the **Insurer's** position, potential or actual rights, or defense under this policy.

**E.  Other Insurance and Indemnification**

Insurance provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this policy. This policy shall be specifically excess over any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

**F.  Allocation**

If both **Loss** covered under this policy and loss not covered under this policy are jointly incurred either because a **Claim** includes both covered and non-covered matters or covered and non-covered causes of action or because a **Claim** is made against both an **Insured** and any other parties not insured by this policy, then the **Insured** and the **Insurer** shall use their best efforts to fairly and reasonably allocate payment under this policy between covered **Loss** and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.

If the **Insurer** and the **Insured** agree on an allocation of **Defense Expenses**, based on covered and non covered matters or persons, the **Insurer** shall advance **Defense Expenses** allocated to covered **Loss**. If there is no agreement on an allocation of **Defense Expenses**, the **Insurer** shall advance **Defense Expenses** that the **Insurer** believes to be covered under this policy until a different allocation is negotiated, arbitrated, or judicially determined.

Any negotiated, arbitrated or judicially determined allocation of **Defense Expenses** on account of a **Claim** shall be applied retroactively to all **Defense Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any advancement or allocation of **Defense Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other loss on account of such **Claim**.

## G. Cancellation; Renewal Provision

The **Insured Organization** may cancel this policy at any time by written notice or by surrender of this policy to the **Insurer** at the address shown on the Declarations Page.

This policy may only be cancelled by or on behalf of the **Insurer** in the event the **Insured Organization** fails to pay any premium when due. In the event of non-payment of premium by the **Insured Organization**, the **Insurer** may cancel this policy upon ten (10) days written notice. The **Insurer** will mail notice to the **Insured Organization's** address as shown in Item 1. of the Declarations Page. The mailing of such notice as aforesaid shall be sufficient proof of notice.

If the **Insured Organization** cancels this policy, the **Insurer** will retain the customary short rate proportion of the premium hereon.

The **Insurer** shall not be required to renew this policy upon its expiration. The offer by the **Insurer** of renewal terms, conditions, Limit of Liability and/or premiums varying from those of the expiring policy shall not constitute a refusal to renew.

If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver to the **Insured Organization** written notice of non-renewal, stating the reasons for non-renewal, at least sixty (60) days prior to the expiration date of this policy.

Any notice of non-renewal will be mailed or delivered to the **Insured Organization's** last mailing address known to the **Insurer**. If notice is mailed, proof of mailing will be sufficient proof of notice.

## H. Discovery Period

If the **Insurer** shall refuse to renew this policy or the **Insured Organization** shall cancel or refuse to renew this policy, the **Insured Organization** shall have the right, upon payment of seventy five percent (75%) of the Full Annual Premium, to a period of three hundred and sixty five (365) days following the effective date of such cancellation or nonrenewal (herein referred to as the "Discovery Period") in which to give written notice to the **Insurer** of any **Claim** first made against the **Insured** during said three hundred and sixty five (365) day period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. As used herein, "Full Annual Premium" means the premium stated in Item 5. of the Declarations Page and any additional premium(s) charged during the **Policy Period**. The rights contained in this clause shall terminate unless written notice of such election together with the additional premium due is received by the **Insurer** at the address shown on the Declarations Page within thirty (30) days of the effective date of cancellation or nonrenewal.

The Discovery Period is not cancelable and the additional premium charged shall be fully earned at the inception of the Discovery Period.

The Limit of Liability available under the Discovery Period is part of and not in addition to the Limit of Liability stated in Item 3. of the Declarations Page.

The rights contained in this clause shall not apply in the event of cancellation resulting from non-payment of premium.

## I. Merger, Consolidation or Acquisition

1. If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets do not exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place on or after the effective date of such creation or acquisition.

2. If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place within the first ninety (90) days after the date of such creation or acquisition. After this ninety (90) day period, the created or acquired **Subsidiary** shall no longer be deemed an **Insured Organization**, unless:

   a. Written notice of the **Subsidiary's** creation or acquisition has been provided to the **Insurer** by the **Insured Organization**, as soon as practicable, and in no event later than ninety (90) days after the date of the creation or acquisition;

    **b.** The **Insured Organization** has provided the **Insurer** with any additional information the **Insurer** may request;

    **c.** The **Insured Organization** has agreed to the terms, conditions, exclusions and additional premium charge as may be required by the **Insurer**; and

    **d.** The **Insurer**, at its sole discretion, has agreed in writing to extend the coverage of this policy to the created or acquired **Subsidiary**.

**3.** If during the **Policy Period**:

    **a.** The **Insured Organization** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    **b.** Any person or entity or group of persons or entities acting in concert shall acquire an amount of more than fifty percent (50%) of the voting power for the election of directors of the **Insured Organization**;

        (either of the above events in 3. a. or b. are hereunder referred to as the "Transaction"),

then this policy shall continue in full force and effect for any **Wrongful Act** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the Transaction. This policy may not be cancelled after the effective time of the Transaction and the premium for this policy shall be deemed fully earned as of such time.

The **Insured Organization** shall give the **Insurer** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

## J. Bankruptcy and Priority of Payments

The bankruptcy or insolvency of the **Insured Organization** or any **Subsidiary** shall not relieve the **Insurer** of any of its obligations hereunder. The coverage provided by this policy, however, is intended primarily to protect and benefit the **Insured Persons**.

With respect to the payment of the policy proceeds, it is agreed that covered **Loss** due under this policy shall be paid by the **Insurer** in the following order of priority:

**1.** First pay such **Loss** for which coverage is provided under INSURING AGREEMENT A. of this policy;

**2.** With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT B. of this policy; and

**3.** With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT C. of this policy.

The **Insured Organization** or its representatives and the **Insurer** shall use their best efforts to agree upon the priority of payment of all **Loss** under this policy. If no agreement is reached regarding the priority of payments, then the **Insurer** and **Insured Organization** will submit the issue of such priority, and only that issue, to binding arbitration.

## K. Representations

The **Insured** represents that as of the inception date of this policy, the information, particulars, documents, representations and statements contained in, attached or referred to in the **Application** are: complete, true and correct; are the basis of this policy; are deemed incorporated into and constituting part of this policy; and are material to the acceptance of the risk assumed by the **Insurer**. This policy is issued in reliance upon the truthfulness and completeness of such information, particulars, documents, representations and statements. Except for knowledge or information possessed by, or facts or circumstances pertaining to the person or persons who signed the **Application**, no statement or representation in the **Application** or knowledge or information possessed by an **Insured Person** will be imputed to any other **Insured Person** for the purpose of determining the existence or availability of coverage under this policy.

## L. No Action Against Insurer

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there has been full compliance with all of the terms and conditions of this policy and until the amount of any **Insured's** obligation to pay **Loss** has been finally determined either by judgment against such **Insured** after adjudicatory proceedings, or by written agreement of the **Insured**, the claimant and the **Insurer**.

No **Insured** has any right under this policy to join the **Insurer** as a party to any **Claim** against an **Insured** to determine the liability of such **Insured**, nor shall the **Insurer** be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**.

**M. Subrogation**

In the event the **Insurer** makes any payment under this Policy, the **Insurer** shall be subrogated to all of the rights of recovery of the **Insured**, who shall execute all papers and take all necessary actions to secure such rights, including the execution of any documents necessary to enable the **Insurer** to effectively bring suit in the name of an **Insured**.

**N. Authorization and Notices**

The **Insured Persons** agrees that the **Insured Organization** acts on their behalf with respect to giving and receiving all notices and return of premium from the **Insurer**.

**O. Changes**

Notice to any agent or knowledge possessed by any agent or representations by persons acting on behalf of the **Insurer** do not effect a waiver or change in any part of this policy or estop the **Insurer** from asserting any right under the terms, conditions and limitations of this policy. The terms, conditions and limitations of this policy can only be waived or changed by written endorsement.

**P. Assignment**

Assignment of interest under this policy does not bind the **Insurer** without its prior written consent.

**Q. Acceptance**

The **Insureds** agree that this policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the **Insurer** relating to this insurance policy.

**R. Headings**

The description in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**S. Governing Law Clause**

This policy shall, to the extent permitted by applicable law, be construed in accordance with the laws of the state or jurisdiction of incorporation or organization of the **Insured Organization** or, in the case of matters pertaining to a **Subsidiary**, the laws of the state or jurisdiction of incorporation or organization thereof.

**T. Territory**

This policy shall apply to **Claims** made against any **Insured** anywhere in the world.

**In Witness Whereof**, the **Insurer** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the **Insurer**.

Secretary                              President

**THIS EXCLUSION CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NUCLEAR ENERGY LIABILITY EXCLUSION**

1.  **Nuclear Exclusion**

    It is agreed that this policy does not apply:

    a.  Under any Liability coverage, to injury, disease, death or destruction:

        (1) With respect to which an **Insured** under this policy is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its Limit of Liability; or

        (2) Resulting from the **hazardous properties** of **nuclear material** and with respect to which:

            (a) Any person or organization is required to maintain financial protection pursuant to the atomic Energy Act of 1954, or any law amendatory thereof; or

            (b) The **Insured** is or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

    b.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of a **nuclear facility** by any person or organization.

    c.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of **nuclear material**, if:

        (1) The **nuclear material**:

            (a) Is at any **nuclear facility** owned by, or operated by or on behalf of an **Insured**; or

            (b) Has been discharged or dispersed there from;

        (2) The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

        (3) The injury, sickness, disease, death or destruction arises out of the furnishing by an **Insured** or services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion applies only to injury to or destruction of property at such **nuclear facility**.

    d.  As used in this Exclusion:

        (1) **Hazardous properties** include radioactive, toxic or explosive properties;

        (2) **Nuclear material** means **source material**, special material or **byproduct material**;

        (3) **Source material**, special **nuclear material** and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

        (4) **Spent Fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

        (5) **Waste** means any **waste** material:

            (a) Containing **byproduct material**; and

            (b) Resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph **(a)** or **(b)** thereof;

        (6) **Nuclear Facility** means:

            (a) Any **nuclear reactor**;

            (b) Any equipment or device designed or used for;

                i.  Separating the isotopes of uranium or plutonium;

    **ii.** Processing or utilizing **spent fuel**; or

    **iii.** Handling, processing or packaging **waste**;

**(c)** Any equipment or device used for the processing, fabricating or alloying of special **nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**e.** **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or destruction of property, the word *injury* or *destruction* includes all forms of radioactive contamination of property.