# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT VITO and | : | CIVIL ACTION |
| UNEQUAL TECHNOLOGIES COMPANY | : | |
| v. | : | |
| RSUI INDEMNITY COMPANY | : | NO. 19-1941 |
| WILLIAM LANDMAN | : | CIVIL ACTION |
| v. | : | |
| RSUI INDEMNITY COMPANY | : | NO. 19-2468 |

## MEMORANDUM OPINION

**Savage, J.**                                                                              **January 27, 2020**

In these declaratory judgment actions, we must determine whether RSUI Indemnity Company has a duty to defend and indemnify Unequal Technologies Company ("UTC"), its CEO and director Robert Vito, and director William Landman ("the insureds") in a shareholder derivative action brought by Joseph D'Ascenzo in the Pennsylvania Court of Common Pleas for Chester County (the "D'Ascenzo Action"). RSUI contends the "related acts" provision and the "prior acts" exclusion in its directors and officers insurance policy bar coverage for the D'Ascenzo Action.

We conclude that among the multiple claims asserted in the D'Ascenzo Action are several that are covered by the policy and are not excluded. Therefore, we shall deny RSUI's motions for judgment on the pleadings and declare that RSUI has a duty to defend the insureds in the D'Ascenzo Action.

**Factual Background**

At the center of the dispute are UTC and its directors. Formed in April 2008, UTC holds licenses to patented shock suppression and force dispersion technology used in athletic equipment, law enforcement and military equipment, and consumer and industrial products.[1] Robert Vito is the president, CEO, Chairman of the Board, and controlling shareholder of UTC.[2] He was the sole director until November 7, 2013 when William Landman became a director.[3] Landman is the co-founding member, principal, and CEO of MainLine Investment Partners, LLC, an investment firm.[4] In 2013, MainLine Investment Partners purchased eight million shares of UTC stock for $12 million through its vehicle MainLine Special Op UT, LLC ("MainLine").[5] MainLine designated Landman a director of UTC as provided under its Investor's Rights Agreement.[6]

In April 2017, Joseph D'Ascenzo, a minority shareholder in UTC,[7] sent UTC a demand to inspect its records.[8] In response, UTC provided documentation in October

---

[1] Def.'s Mot. for J. on Plead. Exh. A-4 at ¶ 12 (Dkt. No. 19-1941, ECF No. 21) ("Derivative Complaint").

[2] Pl. UTC/Vito's Compl. at ¶ 2 (Dkt. No. 19-1941, ECF No. 1); Derivative Complaint at ¶ 2.

[3] Pl. Landman's Compl. at ¶¶ 87, 99 (Dkt. No. 19-2468, ECF No. 1).

[4] Derivative Complaint at ¶ 15.

[5] *Id.* at ¶ 19.

[6] *Id.* at ¶ 26.

[7] *Id.* at ¶ 23.

[8] *Id.* at ¶ 26.

2017.[9] In June 2018, D'Ascenzo filed suit against UTC, Vito, Landman, and several other affiliated entities.[10]

D'Ascenzo's Third Amended Complaint focuses on his claim that he was deprived of an elected seat on the board. He alleges that the board consists of three seats, one for Vito or his designee (Vito), one for MainLine's designee (Landman), and a third nominated by Vito and approved by Landman.[11] He alleges that the Articles of Incorporation provide that if Vito and Landman fail to appoint an independent director, shareholders may elect one.[12] He claims that he launched a proxy bid to fill the third open seat to provide independent oversight of Vito and Landman.[13] According to D'Ascenzo, at a shareholders' meeting in December 2017, he received over eight million votes in support of his proxy bid, representing almost 10% of the shareholders and placing him third in the board elections after Vito and Landman.[14] He claims that UTC, Vito, and Landman attempted to prevent the election from taking place, and have refused to acknowledge the results and allow him to participate in board decisions.[15] In January 2019, at UTC's annual meeting, Vito, Landman, and Anthony Tomasello were elected to the board.[16]

---

[9] *Id.* at ¶ 27.

[10] *Id.* at ¶ 36.

[11] *Id.* at ¶¶ 88-96, 111.

[12] *Id.* at ¶ 132.

[13] *Id.* at ¶ 180.

[14] *Id.* at ¶¶ 188, 194, 209, 213, 215.

[15] *Id.* at ¶ 5.

[16] Pl. UTC/Vito's Compl. at ¶ 47 (Dkt. No. 19-1941, ECF No. 1).

3

Counts I through V of D'Ascenzo's Third Amended Complaint revolve around the December 2017 board election. These counts seek various declaratory judgments related to the election and the third seat on the board.[17] Count VI seeks a declaration that UTC, Vito, and Landman may not pursue shareholders for indemnification for legal fees under UTC's bylaws because the indemnification provisions are unenforceable and unconscionable.[18] Count VII seeks a declaration that D'Ascenzo is excused from making a formal demand on the board before bringing suit as required under 15 Pa. C.S.A. § 1781 because demand would be futile.[19]

Count VIII seeks a declaration that Vito's fraudulent acts and disregard for corporate formalities since 2008 require his removal from the board.[20] It alleges Vito failed to hold annual meetings of shareholders, elect directors by shareholder vote, obtain approval from disinterested directors for self-dealing transactions, deliver financial statements on time, and allow shareholders to inspect books and records.[21] The allegedly fraudulent acts include engaging in self-dealing transactions and usurpation of corporate opportunities, receiving warrants and stock options at prices substantially below market value, adopting bylaws that contravene Pennsylvania law as a tool to oppress shareholders, and making material misrepresentations about UTC's technology in investor pitches.[22]

---

[17] D'Ascenzo TAC at ¶¶ 153-218, 219-239, 240-256, 257-265, 266-286.

[18] *Id.* at ¶¶ 287-299.

[19] *Id.* at ¶¶ 300-316.

[20] *Id.* at ¶¶ 317-343.

[21] *Id.* at ¶¶ 18, 22.

[22] *Id.* at ¶ 323.

Counts IX through XI seek a declaration that the board election held in January 2019 is null and void.[23] These counts request an order for a new election.[24]

At the time D'Ascenzo filed his action, RSUI insured UTC, Vito, and Landman under Directors and Officers Liability Policy, #NP674556, for the period November 2017 to November 2018.[25] RSUI first issued the policy in November 2013 and renewed it annually.[26]

UTC, Vito, and Landman asked RSUI to defend them in the D'Ascenzo Action.[27] RSUI refused, asserting that the claims are not covered under the policy.[28] The insureds then brought these actions seeking a declaration that RSUI has a duty to defend and indemnify them.[29] They also demand reimbursement for their legal expenses in defending the D'Ascenzo Action thus far.[30]

RSUI invokes the policy's related acts provision and the prior acts exclusion. It contends another shareholder's earlier demand letter in 2015 and derivative action in 2016, and the D'Ascenzo Action constitute one interrelated claim that is deemed to have

---

[23] *Id.* at ¶¶ 345-448.

[24] *Id.*

[25] Pl. UTC/Vito's Compl. at ¶ 7.

[26] *Id.* at ¶¶ 7-8.

[27] Pl. UTC/Vito's Compl. at 1-2 (Dkt. No. 19-1941, ECF No. 1); Pl. Landman's Compl. at ¶ 9 (Dkt. No. 19-2468, ECF No. 1).

[28] Pl. UTC/Vito's Compl. at ¶ 61 (Dkt. No. 19-1941, ECF No. 1); Pl. Landman's Compl. at ¶ 45 (Dkt. No. 19-2468, ECF No. 1).

[29] Pl. UTC/Vito's Compl. at ¶¶ 56-63 (Dkt No. 19-1941, ECF No. 1); Pl. Landman's Compl. at ¶¶ 39-52 (Dkt. No. 19-2468, ECF No. 1).

[30] *Id.*

been first made before the policy period.[31] Alternatively, RSUI argues that the D'Ascenzo Action is based in part on wrongful acts that occurred before the policy was first issued on November 19, 2013.[32]

**Standard of Review**

The interpretation of an insurance contract is a question of law. *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). Whether a claim is covered or is barred by an exclusion may be determined on a motion for judgment on the pleadings. *Allstate Fire & Cas. Ins. Co. v. Hymes*, 29 A.3d 1169, 1171 (Pa. Super. 2011).

In deciding a motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c), the court considers the facts alleged in the pleadings and documents attached as exhibits or incorporated by reference in the pleadings. *See* FED. R. CIV. P. 10(c); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007). All well-pleaded factual assertions in the nonmovant's pleadings are accepted as true and all contrary allegations in the movant's pleadings are assumed to be false. 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1368 (3d ed. 2016) (citing *Allah v. Al–Hafeez*, 226 F.3d 247, 249–50 (3d Cir. 2000)).

The movant must establish that no material issue of fact remains to be resolved and it is entitled to judgment as a matter of law. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988); *Shelly v. Johns–Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986). The motion can be granted only if the nonmovant cannot prevail under

---

[31] Def.'s Mot. for J. on Plead. at 15-16 (Dkt. No. 19-1941, ECF No. 21); Def.'s Mot. for J. on Plead. at 15-16 (Dkt. No. 19-2468, ECF No. 26).

[32] Def.'s Mot. for J. on Plead. at 19 (Dkt. No. 19-1941, ECF No. 21); Def.'s Mot. for J. on Plead. at 19 (Dkt. No. 19-2468, ECF No. 26).

any set of facts. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001); *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

**Analysis**

*Scope of Coverage Under the Policy*

The policy is a "claims-made" policy limiting coverage to defined claims first made during the policy period that arise from or relate to conduct occurring after the policy was issued. RSUI contends that a February 2, 2015 letter demanding documents ("Demand Letter") and a June 2016 shareholder derivative lawsuit ("Derivative Action") are prior related acts that preclude coverage of the D'Ascenzo Action. Accordingly, it argues that D'Ascenzo's claims are not covered because they were first made in 2015, before the policy period.

In February 2015, MainLine and Landman, through their attorney, sent the Demand Letter to Vito expressing concerns over UTC's business plan and Vito's conduct in running the business.[33] MainLine and Landman contended in the Demand Letter that UTC's course had eroded shareholder value and expended over $11 million of MainLine's investment with no resulting value.[34] They accused Vito of not having provided Landman with the necessary information he had requested to serve as a director and not having afforded Landman the opportunity to work on a functioning board.[35] They also accused Vito of ignoring corporate formalities and contractual commitments.[36] They demanded that Vito (1) discontinue self-dealing transactions without proper approval; (2) permit them

---

[33] Def.'s Mot. for J. on Plead. Exh. 3 at 1 (Dkt. No. 19-1941, ECF No. 21).

[34] *Id.*

[35] *Id.*

[36] *Id.* at ¶¶ 1-2.

7

to examine the share registrar and other books and records; (3) respect all corporate formalities; and (4) investigate and confirm compliance with various anti-fraud, securities, wage, and tax laws.[37]

In June 2016, MainLine and Landman filed the Derivative Action against Vito and UTC in the Pennsylvania Court of Common Pleas for Montgomery County.[38] The complaint alleged that Vito was actively soliciting new investors with materials that misrepresented UTC's finances and concealed UTC's poor performance.[39] It also alleged that Vito refused to cease his fundraising efforts and to allow the board to review and approve the fundraising materials.[40] They sought damages, an injunction against fraudulent fundraising efforts, and a declaration that certain UTC securities offers had expired and were invalid.[41] The parties settled the Derivative Action a month later.[42]

RSUI contends the February 2, 2015 Demand Letter complaining of how Vito was operating the business, and demanding that Vito produce certain documents and comply with proper corporate governance formalities constitutes a claim under the policy. RSUI argues that the D'Ascenzo Action is the same claim that MainLine and Landman made in the Demand Letter. It also characterizes it as a claim arising out of related prior acts.

Although RSUI acknowledges that the Demand Letter, the Derivative Action, and the D'Ascenzo Action each satisfy the policy's definition of a "claim," it maintains that the

---

[37] *Id.* at ¶¶ 3-7.

[38] Def.'s Mot. for J. on Plead. Exh. 4 (Dkt. No. 19-1941, ECF No. 21).

[39] *Id.* at ¶¶ 44-45.

[40] *Id.* at ¶¶ 42, 62-65, 97-98.

[41] *Id.* at ¶¶ 103-112.

[42] D'Ascenzo TAC at ¶ 73.

8

three must be treated as one claim. RSUI contends that the allegations in the Demand Letter and the Derivative Action substantially overlap with the allegations in the D'Ascenzo Action such that they are one interrelated claim under the policy. Under RSUI's view, this interrelated claim was "first made" upon service of the Demand Letter in February 2015, outside the policy period. RSUI also argues that at least several counts in the D'Ascenzo Action are based on allegations of wrongful conduct occurring before the policy inception date of November 19, 2013. So, RSUI argues, the D'Ascenzo Action is barred because it is based on pre-November 19, 2013 conduct.

There are similarities between the Derivative Action and the D'Ascenzo Action. But, there are significant differences. The parties are different. The relief sought is different. D'Ascenzo was not a party to the Derivative Action. He did not seek a seat on the board of directors until after the Derivative Action was terminated.

The Demand Letter too was significantly different. D'Ascenzo was not making a claim in that letter. MainLine and Landman were. Landman is now a defendant in the D'Ascenzo Action. This is the first time a claim is made against him.

D'Ascenzo's claim, although sounding much like MainLine and Landman's, is not the same. His claim goes beyond complaining of Vito's failure to comport with corporate formalities and self-dealing. It alleges irregularities in the December 2017 annual meeting and the refusal to seat D'Ascenzo as a director. It seeks to place him on the board. The factual bases for this claim did not exist before the inception of the policy.

Even if the Demand Letter were a claim, the insureds are not seeking a defense or indemnity for it. Nor are they doing so for the Derivative Action. They demand that RSUI provide a defense and indemnity for the D'Ascenzo Action only. RSUI must defend

9

them if the D'Ascenzo Action is not related to the Demand Letter or Derivative Action and not based on wrongful conduct occurring before November 19, 2013.

*Duty to Defend*

An insurance carrier's duty to defend is distinct from its duty to indemnify. It is interpreted more broadly than the duty to indemnify. *QBE Ins. Corp. v. Walters*, 148 A.3d 785, 788 (Pa. Super. 2016) (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 n.7 (2006)). An insurer may have a duty to defend even though it may have no duty to indemnify. *Id.* (quoting *Selective Way Ins. Co. v. Hosp. Grp. Servs., Inc.*, 119 A.3d 1035, 1046 (Pa. Super. 2015) (en banc)). A duty to indemnify does not arise until the insured is found liable for a covered claim. *Id.*

The duty to defend is determined solely from the allegations in the complaint in the underlying action. *Pac. Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir. 1985). Because the duty to defend is broader than the duty to indemnify, the complaint in the underlying action must be construed liberally. *Id.* (citing *Frog, Switch & Mfg. Co. Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)). The factual allegations are accepted as true, and all doubts as to coverage are resolved in favor of the insured. *QBE Ins. Corp.*, 148 A.3d at 788 (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (2007)). To prevent artful pleading designed to avoid policy exclusions, it is necessary to examine the factual allegations in the complaint, not how the plaintiff in the underlying action frames the request for relief. *QBE Ins. Corp.*, 148 A.3d at 788 (citing *Donegal*, 938 A.2d at 291). In other words, the focus of the coverage inquiry is on the substance, not the form, of the allegations.

Whenever the complaint sets forth facts raising claims that could possibly come within the policy's coverage, the insurer's duty to defend is triggered. *Id.*; *Pac. Indem. Co.,*

766 F.2d at 760. Any doubt whether the facts give rise to a duty to defend must be resolved in the insured's favor. *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 540-541 (Pa. 2010). Consequently, an insurer is obligated to defend the insured against any suit arising under the policy even if the suit is "groundless, false, or fraudulent" so long as there is a possibility of coverage. *Selective Way Ins. Co.*, 119 A.3d at 1046 (citation omitted).

RSUI contends that it is excused from its duty to defend the insureds because some allegations in the D'Ascenzo complaint overlap with those in the Demand Letter or the Derivative Action. It seems to argue that because it may not have a duty to defend some claims in the D'Ascenzo Action, it does not have a duty to defend any, no matter when they arose. On the contrary, under Pennsylvania law, if a single claim in a multi-claim complaint is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on that covered claim. *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 596 (3d Cir. 2009) (citing *Frog, Switch & Mfg. Co. Inc.*, 193 F.3d at 746). Thus, unless the related acts provision or the prior acts exclusion applies, RSUI is obligated to defend the insureds in the D'Ascenzo Action as long as at least one claim is potentially covered. *Frog, Switch & Mfg. Co. Inc.*, 193 F.3d at 746.

Where the insurer relies on a policy exclusion as the basis for denying coverage, the insurer has the burden of proving that the exclusion applies. *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 158 (3d Cir. 2017) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)); *Tuscarora Wayne Ins. Co. v. Hebron, Inc.*, 197 A.3d 267, 272 (Pa. Super. 2018) (quoting *Swarner v. Mut. Ben. Grp.*, 72 A.3d 641, 645 (Pa. Super. 2013)). Policy exclusions are strictly construed against the

insurer. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206-7 (3d Cir. 2001); *Tuscarora Wayne*, 197 A.3d at 272 (quoting *Swarner*, 72 A.3d at 645).

*Related Acts Provision*

The policy's "related acts" provision provides that:

> All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim for all purposes under this policy . . . and shall be deemed first made when the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period.[43]

RSUI argues that the D'Ascenzo Action arises out of the same facts as the Demand Letter and the Derivative Action. It highlights multiple overlapping allegations, including: (1) the UTC board consisted of three seats; (2) Vito failed to nominate a third director for Landman's approval; (3) Vito and UTC failed to hold regular board meetings; (4) an audit or special committee of independent directors is needed to conduct an internal investigation into Vito's and UTC's conduct; (5) Vito and UTC did not provide adequate information to shareholders and Landman when requested; (6) Vito and UTC have ignored many corporate formalities; (7) Vito engaged in self-dealing transactions without proper approval; and (8) Vito misrepresented UTC's financial information to solicit new investors.[44] RSUI points out overlapping allegations concerning the various stock purchase agreements and investor rights agreements between UTC, Vito, Landman, and

---

[43] Def.'s Mot. for J. on Plead. at 11 (Dkt. No. 19-1941, ECF No. 21); Def.'s Mot. for J. on Plead. at 11-12 (Dkt. No. 19-2468, ECF No. 26).

[44] Def.'s Mot. for J. on Plead. at 12 (Dkt. No. 19-1941, ECF No. 21); Def.'s Mot. for J. on Plead. at 12 (Dkt. No. 19-2468, ECF No. 26).

MainLine.[45] RSUI also argues that D'Ascenzo's own demand in April 2017 to inspect UTC's books and records "mirrored" the Demand Letter.[46]

The insureds assert that to exclude coverage under the related acts provision, RSUI must show a "substantial overlap" between the facts alleged in the D'Ascenzo Action and the facts alleged in the Demand Letter and the Derivative Action. They assert that RSUI glosses over obvious distinctions between the D'Ascenzo Action and the Demand Letter and the Derivative Action. They contend that the factual allegations surrounding the December 2017 and January 2019 shareholder meetings and elections comprise the core of the D'Ascenzo Action. The insureds concede that some allegations in the D'Ascenzo Action overlap with the Demand Letter and the Derivative Action, but they maintain these overlapping allegations do not form the basis for the relief D'Ascenzo seeks in his Third Amended Complaint.

Some of the allegations in the D'Ascenzo Action are based on the same wrongful acts alleged in the Demand Letter and the Derivative Action. In particular, Count VIII of D'Ascenzo's complaint calling for Vito's removal from UTC's board is predicated on Vito's allegedly fraudulent conduct in soliciting investment, engaging in self-dealing transactions, and ignoring corporate formalities. These same allegations formed the basis of the Demand Letter and the Derivative Action. D'Ascenzo includes allegations concerning Vito's allegedly fraudulent conduct and disregard for corporate formalities throughout his complaint, without specifically tying the allegations to a particular count.

---

[45] Def.'s Mot. for J. on Plead. at 12-13 (Dkt. No. 19-1941, ECF No. 21); Def.'s Mot. for J. on Plead. at 12-13 (Dkt. No. 19-2468, ECF No. 26).

[46] Def.'s Mot. for J. on Plead. at 13 (Dkt. No. 19-1941, ECF No. 21); Def.'s Mot. for J. on Plead. at 13 (Dkt. No. 19-2468, ECF No. 26).

Although Count VIII may be predicated on facts related to the Demand Letter and the Derivative Action, the other ten counts are not. Construing the allegations in favor of the insureds, we agree with them that the gravamina of Counts I through VII and Counts IX through XI are the December 2017 and January 2019 shareholder meetings and elections. D'Ascenzo alleges fraudulent conduct or disregard of corporate formalities in some counts, but the request for relief does not rely on any of the allegations central to the relief sought in the 2015 Demand Letter and the 2016 Derivative Action.

The earliest the conduct at the heart of these counts began was sometime in 2017, when D'Ascenzo learned from UTC's bylaws that the annual meeting of shareholders was fixed for the third Monday in December.[47] This event marked the beginning of D'Ascenzo's quest to launch a proxy bid for director and to compel UTC and Vito to hold a shareholders meeting in December 2017. These events occurring in late 2017, 2018, and early 2019 form the bases for the requests for relief in Counts I through VII and IX through XI.[48]

At its core, the D'Ascenzo Action complains of the actions taken by the insureds to deprive D'Ascenzo of a seat on the board of directors. The Third Amended Complaint recounts events leading up to and during the annual meeting at which D'Ascenzo claims he was elected to the board. These events occurred after the acts cited in the Demand Letter and the Derivative Action. They are discrete acts and claims that did not exist prior

---

[47] D'Ascenzo TAC at ¶ 174.

[48] D'Ascenzo's April 2017 demand to inspect UTC's books and records similarly does not serve as the point at which the claims in the D'Ascenzo Action were "first made." The April 2017 demand letter allegations are not related to the allegations forming the basis of the D'Ascenzo Action. The D'Ascenzo Action is almost entirely predicated on allegations surrounding the December 2017 shareholder meeting and election. D'Ascenzo's demand and UTC's response were part of the events leading up to this meeting and election, not the basis of the relief sought in the complaint.

to the relevant policy periods. Therefore, the related claims provision in the policy does not bar the majority of D'Ascenzo's claims.

*Prior Acts Exclusion*

Coverage under the policy only applies to claims first made and reported during the 2017-2018 policy period that do not arise from wrongful acts occurring prior to November 19, 2013.[49]

The policy's "prior acts" exclusion provides that:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured that alleges, arises out of, is based upon or attributable to, directly or indirectly, in whole or in part, any actual or alleged Wrongful Acts which first occurred prior to November 19, 2013.[50]

RSUI argues the D'Ascenzo Action presents a "general scheme" to defraud shareholders beginning as early as 2008. It highlights D'Ascenzo's allegations that: (1) certain provisions of UTC's bylaws adopted in 2008 are "void and unconscionable" and "point to a clearly laid out scheme of Vito's intentions"; (2) Vito and UTC have failed to adhere to corporate formalities since 2008; and (3) Vito engaged in self-dealing transactions beginning in 2009. RSUI argues these allegations of pre-November 19, 2013 conduct apply to Landman as well because D'Ascenzo alleges Landman participated in self-interested transactions and disregarded corporate formalities as soon as he became a director on November 7, 2013, continuing Vito's "general scheme" to defraud shareholders. RSUI also argues that the prior acts exclusion still applies because the

---

[49] Def.'s Mot. for J. on Plead. at 15-16, 19 (Dkt. No. 19-1941, ECF No. 21); Def.'s Mot. for J. on Plead. at 15-16, 19 (Dkt. No. 19-2468, ECF No. 26).

[50] Def.'s Mot. for J. on Plead. at 16 (Dkt. No. 19-1941, ECF No. 21); Def.'s Mot. for J. on Plead. at 16 (Dkt. No. 19-2468, ECF No. 26).

15

allegations against Landman are based on alleged wrongful acts that occurred before November 19, 2013.

The insureds reiterate that the core of D'Ascenzo's complaint is his claim surrounding the UTC board election. They argue the election-related claims depend solely on facts occurring in 2017 or later. They concede that Count VIII may be based on pre-November 19, 2013 conduct. However, they maintain that the "overwhelming focus" of the D'Ascenzo Action is on the board election and most of the allegations concerning pre-November 19, 2013 conduct are "extraneous."

RSUI counters that numerous allegations of pre-November 19, 2013 conduct form the basis of the election allegations. It argues that the "arising out of" language in the prior acts exclusion means "but-for" causation. RSUI points out that the various agreements entered between UTC, Vito, Landman, and MainLine fixed the board membership at three directors and one had been open since November 2013. RSUI argues these allegations directly underpin the election counts because they show that the board had an open third seat and the insureds' allegedly fraudulent conduct motivated D'Ascenzo to run for the vacant seat. According to RSUI, "but-for" the insureds' pre-November 19, 2013 actions, there would be no election claims in 2017 and 2019.

It does not matter how long a third seat on the board had been vacant. What matters is when D'Ascenzo was denied that seat. D'Ascenzo claims he was elected in December 2017 and has been deprived of the seat since then. He filed the underlying lawsuit in June 2018. Both the election and the filing of the lawsuit occurred during the policy period. Whether the third seat had existed and had been unfilled for years before 2017 is not relevant. Each seat on the board was available to be filled by election on an

annual basis. Consequently, each seat was a new one each year. No one made a claim to a third seat until D'Ascenzo did in 2017.

Some counts in the D'Ascenzo Action may be based on conduct occurring before November 19, 2013. Count VIII is clearly predicated on specific allegations of Vito's fraudulent conduct and disregard for corporate formalities beginning before the prior acts cut-off date and continuing through the December 2017 meeting and election. These allegations form the basis for the relief sought in Count VIII because D'Ascenzo argues these actions disqualify Vito from serving on UTC's board. Count VI arguably involves pre-November 19, 2013 conduct because it is based on allegedly unconscionable and void bylaw provisions adopted in 2008.

The remaining nine counts are based entirely on events surrounding the 2017 and 2019 elections. Unlike Counts VI and VIII, the substance of the remaining counts are actions the insureds took to prevent the December 2017 election and to hinder D'Ascenzo's efforts after the election, including holding another election in January 2019. These actions began in 2017. In other words, the pre-November 19, 2013 conduct was not a necessary "but-for" cause of the election claims.

**Conclusion**

We conclude that because the D'Ascenzo Action includes claims based on allegations that are not related to the Demand Letter or the Derivative Action, or to conduct occurring before November 19, 2013, RSUI must defend the insureds. If the jury finds for D'Ascenzo on any of the covered counts in the state court action, RSUI will have a duty to indemnify them. Therefore, we shall deny RSUI's motions for judgment on the pleadings.